34 C.C.P.A.(Patents)

### Application of RUBEN.
### Patent Appeal No. 5239.

Court of Customs and Patent Appeals.
Feb. 11, 1947.

Rehearing Denied April 18, 1947.

Watson, Bristol, Johnson & Leavenworth, of New York City (Leonard A. Watson and Norman N. Schuttler, both of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D.C. (R. F. Whitehead and Joseph Schimmel, both of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

Appellant filed in the United States Patent Office an application for a patent for new and useful improvements in an "Electrostatic Condenser." The application is stated therein to be a continuation-in-part of his two co-pending applications, Serial No. 256,668, filed February 16, 1939, and Serial No. 288,944, filed August 8, 1939.

The Primary Examiner allowed claims 21, 22, 24 and 25 and finally rejected claims 26 to 32, inclusive. All of the claims are directed to a process.

Prior to the decision of the Board of Appeals an affidavit was filed on behalf of appellant for the purpose of sustaining his contentions that the Primary Examiner had erred in his rejections. The board reversed that part of the decision of the examiner rejecting claims 30, 31 and 32 and affirmed his rejection with respect to claims 26 to 29, inclusive.

Appellant requested reconsideration of the board's decision as to claims 26 and 27

and submitted claims 33 and 34, stated to be claims 28 and 29 in amended form. The board adhered to its previous decision as to claims 26 and 27 and held proposed claim 34 to be in the same class as those two claims. Claim 33, however, was held to be allowable and its entry and allowance were recommended.

Appellant appealed here from both decisions of the board and the issue before us involves claims 26, 27 and 34. They read as follows:

"26. The method of treating regenerated cellulose sheet for improving its electrical characteristics as a dielectric spacer in electrostatic condensers and the like, which comprises, immersing said sheet in water at a temperature above about 40° C., maintaining a co-relation between the temperature of the water and the time of immersion of the sheet to effect substantial removal of soluble impurities from the latter, and thereafter drying said sheet."

"27. The process of reducing the power factor and increasing the resistance of regenerated cellulose which has been made into sheet form and dried which comprises the steps of dialyzing said film to remove soluble impurities by passing said film through a bath of water at a temperature between 40° C. and 100° C. and maintaining a co-relation between the temperature of the water and the time of immersion of the sheet to effect substantial removal of soluble impurities from the latter and thereafter drying said sheet."

"34. The method of treating regenerated cellulose film, which comprises the steps of dialyzing said film in water at a temperature above about 40° C. for a period of time so co-related to the temperature as to insure substantial removal of soluble dielectrically harmful impurities from said film, then removing and uniformly drying said film to produce a smooth dry sheet, said sheet having a power factor of not more than 0.5% at 20° C. when used as a dielectric spacer in a condenser subjected to commercial 60 cycle a. c. voltage."

While the general object of the invention is to provide for "* * * an electrostatic condenser employing a sheet dielectric of regenerated cellulose having improved dielectric properties," one of the objects of the invention is the treatment of regenerated sheet cellulose to be used commercially as a dielectric spacer in electrostatic condensers. That treatment is generally illustrated in the above-quoted claims.

The examiner rejected claims 26 and 27 as being indefinite, stating that the time of treatment therein to be stated only in terms of the desired result and further that such indefinite limitation is unnecessary for the reason that in the allowed claims there are specific limitations of time.

In rejecting claims 28 and 29 (reformed claims 33 and 34) the examiner held them to be unpatentable over either of the following references:

Brandenberger, 981,368, January 10, 1911.
Brandenberger, 1,601,289, September 28, 1926.

The Brandenberger Patent No. 981,368 relates to a process for the manufacture of cellulose films of an indefinite length in a continuous manner. The process begins with a water solution of cellulose, particularly cellulose xanthate. After the film has been formed in the solution by coagulation with sulphate of ammonia or other suitable salts it is treated for the purpose of removing all the impurities formed as well as to render the film insoluble in water. The last step of the process consists of washing the film in cold and hot water. No temperature is given for the hot water. Neither is the length of time for washing mentioned.

The Brandenberger patent No. 1,601,289 is directed to a process of producing in a continuous manner strips or films of regenerated cellulose obtained from sodium cellulose xanthate, termed in the patent generally as "viscose." The coagulation of the viscose may be obtained by means of a bath containing an aqueous solution of sulphate of ammonia, a mixture of that sulphate and an acid, a mixture of the sulphate and a base bisulphate of soda or sulphate of soda with an acid added thereto, or magnesium sulphate or zinc sulphate. The patent also discloses that any two normal sulphates in combination may be used. The composition of the bath is to be determined by its temperature, condition of the viscose as to being matured or ripened and

composition thereof, desired thickness of the film and the time within which the viscose is in contact with the coagulating solution.

One of the last steps in the process is the washing of the film, preferably with hot water at a temperature of up to 100° C. The length of time that the film is subjected to hot water treatment is not disclosed. The baths to which the viscose is subjected are for the purpose of purifying the film as in his former referred to patent.

In his rejection of claims 28 and 29 the examiner held that since they contained no definite time of treatment in connection with temperature limitations, they do not distinguish over either of the references.

It is not necessary to discuss the rejection by the examiner of claims 30 to 32, inclusive, because they were held to be allowable by the board.

In the affidavit it is stated that the dielectric spacer of Ruben differs from the ordinary commercial sheet of cellophane in that it is prepared by a distinctive method comprising dializing. A sheet of conventional regenerated cellulose is said to contain ionizable impurities within its cellular structure and the dializing consists in substantially removing such impurities by the immersion of the sheet in water heated to a specified elevated temperature. It is stated that the washing of the film according to the conventional method merely removes impurities from its surface but not from within the structure in any substantial amount and that the process of appellant supplements the conventional process used in the manufacture of cellophane.

The affiant discussed the Brandenberger patents stating that the patentee appreciated none of the problems solved by appellant and that those patents relate merely to the production of cellophane and not to dialized regenerated cellulose dielectric sheets.

In affirming the examiner the board pointed out that not only was the claimed temperature of 40° C. or higher important, but also that the time of immersion of the film in hot water was important, although variable within wide ranges in accordance with different temperatures of the water and different thicknesses of the films. The board stated that the prior art discloses washing the film in hot water at temperatures contemplated by appellant and without limiting the time of immersion so that in order to distinguish his invention over the prior art, appellant must define in his claims a specified critical difference therefrom with respect to the length of time the film is subjected to the action of hot water. The board held, because in the rejected claims there is no minimum limitation of washing time, but in effect merely a statement of the result desired, that the claims do not patentably distinguish from the references.

The board in its first decision with reference to the affidavit merely stated that according to the expert who made the affidavit, persons following the teachings of the prior art in all probability would continue the hot water wash for such a short time (about 20 seconds) as to fail in dialyzing out ionizable impurities.

It may be noted, from a reading of the rejected claims and the disclosures of the prior art, that it is impossible to determine how long the cellulose sheet is to be washed or immersed in hot water. It is clear that the immersion of the film in hot water at a temperature up to 100° C. is disclosed in the prior art, but it seems to us that "* * * maintaining a co-relation between the temperature of the water and the time of immersion of the sheet to effect substantial removal of soluble impurities from the latter, * * *" is, as stated by the board, setting out the result to be obtained. We believe that one endeavoring to practice the invention as defined by the rejected claims would be compelled to experiment with the film in the bath until he was able to determine the length of time necessary for dialyzation. We are confirmed in this belief for the reason that in the specification it is disclosed that the time within which the dialyzing is accomplished may be shortened by the application of an electrical potential difference across the film and its dialyzing bath. Employing the film as an anode, the completeness of dialysis is indicated by means of a calorimetric indicator. It is apparent that it is necessary to know when the dialyzing process has been completed. When both temperature

and time are set out such result seemingly is known, but without such time limitations, as in the involved claims, it would necessarily require experiments to determine desired results. It may also be stated that in all of the allowed claims and claim 34, recommended for allowance by the Board of Appeals, definite times of immersion are stated with the minimum of 45 seconds and a maximum of at least one minute.

It is probably true, as stated in the affidavit, that Brandenberger had no conception of the problem successfully attacked by appellant. Nevertheless it would appear from the affidavit that if the cellulose sheet of the patentee remained long enough in hot water substantially complete dialyzation would necessarily take place.

There must be some co-relation in the Brandenberger processes between the temperature of the hot water and the time during which the film remains therein. Otherwise the hot bath could not function for its purpose of purification. If there is a critical difference, as contended by appellant, between the co-relation of the time and temperature of the Brandenberger processes and that present in the rejected claims, such has not been shown.

It is clear to us that the rejected claims do not clearly or properly distinguish from the references as was held by the board.

For the reasons herein given the decision of the board is affirmed.

Affirmed.